FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 07, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIBRA B.,[1] | No. 1:18-cv-03111-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 15, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No.

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 17.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [her] physical or mental ability to do basic work activities," the

analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the

claimant's impairment does not satisfy this severity threshold, however, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§

404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On September 10, 2014, Plaintiff applied both for Title II disability

insurance benefits and Title XVI supplemental security income benefits alleging a

disability onset date of September 9, 2014.  Tr. 182-96.  The applications were

denied initially, Tr. 117-20, and on reconsideration, Tr. 123-35.  Plaintiff appeared

before an administrative law judge (ALJ) on February 28, 2017.  Tr. 38-69.  On

March 31, 2017, the ALJ denied Plaintiff's claim.  Tr. 14-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since the alleged disability onset date.

Tr. 19.  At step two, the ALJ found that Plaintiff has the following severe

impairments:  carpal tunnel syndrome, ulnar neuropathy, and complex regional pain syndrome.  Tr. 19.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 23.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift and/or carry twenty pounds occasionally and ten pounds frequently, and can stand and/or walk, and sit, for about six hours in an eight-hour day with normal breaks. [Plaintiff] can push and/or pull, including the operation of foot controls, without limitation except for the lift and carry limitations. She can frequently climb, stoop, kneel, crouch, and crawl, and can occasionally reach, handle, and finger with her right upper extremities. [Plaintiff] must avoid concentrated exposure to extremes of heat and vibrations.

Tr. 23.

At step four, the ALJ found Plaintiff is capable of performing past relevant work as a Substance Abuse Counselor.  Tr. 27.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of September 9, 2014, though the date of the decision.  Tr. 28.

On April 26, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ adhered to SSR 03-02p;

2. Whether the ALJ properly identified Plaintiff's severe impairments at step two;

3. Whether the ALJ conducted a proper step-three analysis;

4. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

5. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 15 at 1, 5.

**DISCUSSION**

**A. SSR 03-02p**

Plaintiff argues the ALJ failed to recognize that the complex regional pain syndrome (CRPS) evaluation was governed by Social Security Ruling (SSR) 03-02p. ECF No. 15 at 11-12. SSR 03-02p recognizes that the most common acute clinical manifestations of CRPS are intense pain and findings of autonomic dysfunction at the site of the precipitating trauma and spontaneously occurring pain associated with abnormalities in the affected region involving the skin,

ORDER - 8

subcutaneous tissue, and bone.  CRPS claims are "adjudicated using the sequential

evaluation process, just as for any other impairment" and so "[i]f the adjudicator

finds that pain or other symptoms cause a limitation or restriction having more than

a minimal effect on an individual's ability to perform basic work activities, a

"severe" impairment must be found to exist."  SSR 03-02p.  Here, while the ALJ

did not cite to SSR 03-02p, the ALJ followed the sequential process and made a

finding that Plaintiff's statements about the severity of her reported symptoms as to

her 1) left upper extremity and mental impairments were not substantiated by the

objective medical evidence and did not cause a limitation or restriction having

more than a minimal effect on Plaintiff's ability to perform basic work activity and

2) right upper extremity were sufficiently addressed by an occasional manipulative

restriction and light work.  Tr. 20-22, 25.  This approach was consistent with SSR

03-02p.  As discussed *infra*, the ALJ's findings were rational and supported by

substantial evidence.

**B.  Step Two: Severe Impairments**

Plaintiff contends the ALJ erred at step two by failing to identify her

bilateral hand impairments—not just her right hand—and mental impairments as

severe impairments.  ECF No. 15 at 4-11.

At step two of the sequential process, the ALJ must determine whether the

claimant suffers from a "severe" impairment, i.e., one that significantly limits her

ORDER - 9

physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 416.921, 404.1521. The claimant's own statement of symptoms alone will not suffice. *Id.*

The ALJ then considers whether the medically determinable impairment is severe or not severe. This is a de minimis standard. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work," SSR 85-28 at *3, including basic work activities, such as lifting, pushing, pulling, reaching, carrying, handling, understanding, carrying out and remembering simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations, 20 C.F.R. §§ 416.921, 404.15210.

### 1. Left Hand Impairment

Plaintiff argues the ALJ erred by not considering that she had severe impairments in both hands—not just her right hand. ECF No. 15 at 4-11. To succeed, Plaintiff must establish there was medical evidence proving that Plaintiff suffers from bilateral upper extremity impairments that significantly limit her

ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, under the step-two analysis, the ALJ did not discuss whether Plaintiff's conditions in her left upper extremity were severe. However, in other portions of the ALJ's decision, the ALJ found: 1) Plaintiff "does not meet the listing under 1.02 as she does not have bilateral impairments in each of her upper extremities that prevent her from effectively performing fine and gross motor manipulations," Tr. 23, and 2) Plaintiff's "mild pain in her left" is "accounted for with the above limitations," Tr. 26. Because the ALJ found that Plaintiff's left upper extremity conditions were mild (and not significantly limiting), the ALJ inherently found that Plaintiff's left upper extremity conditions were not severe. This finding is supported by substantial evidence. Although Plaintiff was occasionally observed with left hand decreased strength and other symptoms and was diagnosed with carpal tunnel syndrome, ulnar neuropathy, Cubital Tunnel Syndrome, and complex regional pain syndrome on her left hand, she had surgery to address these conditions on August 26, 2015, within one year of the alleged disability onset date. Tr. 870-71, 928, 1085-88. Following this surgery and subsequent physical therapy, there are minimal medical findings to support Plaintiff's reports of continued disabling pain and limitations for her left upper extremity. *See* Tr. 897-98, 902-03, 944-53, 990-1011, 1047-68 (void of negative objective observations relating to her left upper extremity); Tr. 900 (Oct. 2015: "Incision site from ulnar surgery well healed"); Tr.

939-40, 968 (Jan. 2016: "Scar medial aspect of left arm at the elbow. Sensitivity to light touch."); Tr. 911 (July 2016: "Does have some neuropathic diffuse pain in upper extremities"); Tr. 971 (Nov. 2016: some weakness in right upper extremity but no tremors; resting comfortably). Tr. 1076-80 (Dec. 2016: exam of upper extremities did not "show any concerning swelling or limited range of motion," although it was "[c]learly painful" for Plaintiff, who had been off her pain medication for a month, "to move the fingers and the wrist" and thus Dr. Mongrain ordered x-rays and labs, which are not of record); Tr. 1073 (Dec. 2016: "No bone, joint, tendon, or muscle abnormalities. Digit and Nails: medial edge of nails are ingrown with TTP bilaterally . . . normal mood and full affect"). Moreover, while Plaintiff continued to receive treatment from Waters Edge Pain Clinic for her reported upper extremity pain, the treatment notes are largely devoid of consistent objective findings or observations indicating significantly weakened left grip or strength or reduced range of motion. Tr. 792-833. In addition, the medical opinion jointly signed by Dr. Chad Mongrain and Jackie Earl, OT/L, which listed bilateral upper extremity pain, weakness, and decreased grip strength pre-dated Plaintiff's August 2015 surgery on her left upper extremity and was rationally discounted as discussed *infra*. Tr. 492-95. On this record, the ALJ did not error by not listing a left upper extremity condition as a severe impairment.

Even if the ALJ should have determined that Plaintiff's left upper extremity condition was a severe impairment, any error would be harmless because the ALJ resolved step two in Plaintiff's favor, proceeded with the five-step analysis, and crafted an RFC based on all of Plaintiff's supported symptoms.  Tr. 24; *see Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  While the RFC did not include bilateral manipulative limitations, it did include bilateral lifting and carrying limitations and an occasional-manipulative limitation for the right upper extremity. Tr. 23.  Plaintiff failed to establish consequential error.

2. *Mental Impairment*

Plaintiff argues the ALJ erred by not considering that she had a severe mental impairment caused by the pain, depression, and anxiety she endures due to her upper extremity conditions.  ECF No. 15 at 6-11.  To succeed, Plaintiff must establish there was medical evidence proving that Plaintiff suffers from a psychological impairment significantly limiting her ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Plaintiff's conditions did not cause more than a minimal limitation on Plaintiff's ability to perform basic mental work activities.  Tr. 20.

An as initial matter, the ALJ found that the medical evidence indicated Plaintiff dealt with several significant situational stressors over the relevant period,

including divorce, situations with her children, the death of her mother, a vehicle breakdown, and being sued. Tr. 20. Temporary severe limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. §§ 404.1509, 416.909 (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *see Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). Here, the ALJ's finding that Plaintiff's mental health conditions caused only minimal impairment, which was heightened at times due to significant situational stressors, is a rational finding supported by substantial evidence. While Plaintiff's mental health waxed and waned, the record reflects that the moderate (or significant) limitations were the result of situational stressors. While Plaintiff is correct that her mental functioning at home and in the community are not assumed to transfer to a work setting "where the demands and stressors differ from those at home," 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 12.00(3)(c), the ALJ rationally determined that Plaintiff's mental conditions would minimally affect her basic work activities and therefore did not constitute a severe disorder.

Next, the ALJ found that Plaintiff's treatment notes regularly described normal psychiatric observations and normal performance on mental status

examinations, which were inconsistent with Plaintiff's reports of severely limiting mental health symptoms. Tr. 20-21. When assessing a claimant's degree of functional limitation, the ALJ considers all relevant and available clinical signs and laboratory findings, the effects of symptoms, and how functioning may be affected, such as by chronic mental disorders, structured settings, medication, and other treatment. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Here, Plaintiff contends the ALJ erred by concluding that the objective findings in Plaintiff's treatment records were normal by either 1) relying on records that predated the alleged onset date; 2) were notes from physical, rather than mental health treatment, records; or 3) were cherry-picked mental health records. ECF No. 15 at 9. A full review of the record supports the ALJ's finding that Plaintiff was generally observed and found with normal mental status and performance. Plaintiff mistakenly concluded that an October 11, 2014 treatment note, Tr. 346, predated the alleged onset date of September 9, 2014. ECF No. 15 at 9 (contending that Tr. 346 predated the alleged onset date). In fact, the treatment note cited, Tr. 346-47, is from October 11, 2014 (after the September 9, 2014 alleged onset date), related to an appointment for Plaintiff's reported pain in both arms, and states, "[i]nsight and judgment appear both to be intact and appropriate. Mood and affect are described as normal and full affect." Tr. 346. In addition, a medical note from September 5, 2014, a mere four days before Plaintiff's alleged disability onset date, is related to a ketamine

infusion treatment for her right upper extremity pain and repeatedly noted that

Plaintiff was using her laptop with "[m]ood euthymic, denies thoughts of self-

harm.  Affect congruent.  Speech normal rate, tone, volume.  Interactive, good eye

contact.  Makes good eye contact.  Remote and short-term memory intact."  Tr.

370.  Moreover, the ALJ appropriately considered observations and findings from

appointments for physical treatments as Plaintiff's pain resulting from her physical

symptoms is at the core of Plaintiff's psychological impairment.  Tr. 56-57, 331-

34.  The ALJ's finding that Plaintiff's treatment notes regularly described

generally normal psychiatric observations and normal performance on mental

status examinations is rational and supported by substantial evidence.

Finally, the ALJ determined the medical opinion evidence reflected that

Plaintiff's psychological impairment was not significantly limiting.  For instance,

in June 2016, Plaintiff's treating therapist, Mary Day, opined that Plaintiff's basic

work abilities were either not significantly limited or mildly limited, but that

Plaintiff would miss one day of work per month.  Tr. 422-24.  The ALJ rationally

discounted Ms. Day's attendance opinion as unexplained and unsupported as the

treatment notes reflect mild waxing and waning, other than stress related to the

death of Plaintiff's mother in August 2016 and other serious situational stressors.

Tr. 21; *see Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (recognizing

that a medical opinion may be rejected if it is unsupported by the provider's

ORDER - 16

treatment notes); *see, e.g.*, Tr. 662 (May 6, 2016: "mood 'so much better,' affect congruent with range and humor, insightful and working proactively to maintain stability"); Tr. 660 (May 13, 2016: "mood 'better, much more manageable,' affect congruent with some range, concerned about insight regarding marijuana and alcohol use and impact on functioning and treatment"); Tr. 658 (June 3, 2016: "mood 'tired but calmer,' affect congruent with some range and humor, insight about problems and needs"); Tr. 656 (June 10, 2016: "mood 'calm,' affect congruent, reflective, describes some insight about need for further reprocessing and current responses in relationships, patterns of behavior"); Tr. 654 (June 17, 2016: "mood 'good,' affect congruent with some range, able to tolerate distress related to current stressors and identify helpful strategies and choices"); Tr. 652 (July 1, 2016: "mood 'stressed,' affect congruent with some range, has insight about recovery needs but actively using marijuana and occasional alcohol use, judgment regarding this is limited but acknowledges need to examine this/remain abstinent"); Tr. 650 (July 8, 2016: "mood 'proud, little confused,' affect congruent, has insight about relational patterns and needs/beliefs driving them, using skills effectively out of session"); Tr. 648 (July 15, 2016: "mood 'OK, better,' affect congruent with range and humor, insightful and making significant efforts in skill use and mindfulness out of session"); Tr. 647 (Aug. 8, 2016: noting that Plaintiff's mother passed away; feeling "anger, grief"); Tr. 645 (Aug. 12, 2016: using

marijuana and drinking alcohol daily to cope; afraid to allow grief; feeling alone;

"mood 'grieving,' affect congruent and tearful, has some insight about needs and

willing to consider abstinence from alcohol"); Tr. 643 (Aug. 23, 2016: not doing

well, struggling with drinking and smoking pot a lot in order to deal with the grief

of her mother's death); Tr. 639 (Aug. 25, 2016: talked about grief process and

strategies for distress tolerance; mood was sad; affect congruent but able to

endorse resource and supports and agrees to increase use of adaptive coping); Tr.

637 (Sept. 1, 2016: "mood "much better," affect congruent, managing episodes of

distress using skills effectively; appropriate to continue trauma process with

stability"); Tr. 635 (Sept. 20, 2016: reporting "pretty messed up, having massive

depression" and agrees to contact [primary care provider] about insurance issue for

approval of ketamine injection for pain in arms and back; mood is depressed,

speech is somewhat slow, content vague, disorganized); Tr. 633 (Oct. 17, 2016:

attending daily activities including activities of daily living, going to church and

AA meetings, feels "better, less depressed" and able to recall memories of mother

without intense grief); Tr. 631 (Oct. 20, 2016: "mood 'much better,' expresses

'happiness, enjoyment of life again,' significant decrease in anhedonia, fatigue,

depressed mood" and reporting joining a new church, attending women's groups

and activities at least three times a week, and daily productive activity); Tr. 630

(Oct. 27, 2016: missed session to attend funeral of extended family member and

reported she was "doing fine"); Tr. 628 (Oct. 28, 2016: since abstaining from marijuana her pain increased to level 5, reporting a ketamine injection scheduled to address pain; reporting daily positive social contacts, performing activities of daily living, using cognitive and behavioral skills daily to manage depression; discussing grieving of relative's death); Tr. 627 (Dec. 5, 2016: Plaintiff called to tell Ms. Day that she had been at inpatient drug treatment program for past few weeks and that she left inpatient without completing the program because without medication her pain was intolerable); Tr. 625 (Dec. 9, 2016: "mood 'pretty good,' affect congruent, insightful about needs and problems and motivated to continue [treatment]"). The one medical record indicating that Plaintiff missed a counseling session due to pain was in April 2015 before Plaintiff's surgery on her left upper extremity. ECF No. 15 at 3 (citing Tr. 751). This summary of the therapy notes reflects that Plaintiff understandably had a difficult time grieving her mother's death, but that Plaintiff's mental health conditions were a non-severe impairment. On this record, the ALJ reasonably discounted Ms. Day's unexplained "check box" opinion that Plaintiff would miss one day or more a month as there was no indication in the treatment notes that Plaintiff was unable to attend therapy—or work—because of her mental-health impairments.

Plaintiff also contends the ALJ erred in finding that her mental health conditions were a severe impairment by erroneously rejecting Sue Gunn, M.S.'s

and Rebekah Cline, Psy.D.'s short-duration opinions. ECF No. 15 at 11. In November 2014, Ms. Gunn opined that Plaintiff's mental-health impairments were not permanent but would last six months and that Plaintiff's mental health could be treated with individual cognitive behavioral skills therapy and medication management and that her depression was in part related to her chronic pain. Tr. 482-84. In May 2015, Dr. Cline found that Plaintiff was "mentally capable of working, but her physical condition is preventing her from doing many things she used to do, though final disposition of her physical condition is deferred to the appropriate provider. Continuation of mental health therapy is advised and ongoing medication management, but participating in these activities does not preclude working in some capacity." Tr. 571. Dr. Cline indicated that Plaintiff would be impaired for three-to-six months. Tr. 571. On this record, the ALJ appropriately discounted these short-durational opinions, as the ALJ deemed Plaintiff's left upper extremity condition, for which surgery was conducted in August 2015, as only causing mild pain and other symptoms and the ALJ adequately addressed the right upper extremity limitations with an occasional manipulative restriction and also included a bilateral lifting and carrying limitation. Therefore, with this RFC, the ALJ appropriately found that any pain resulting from the upper extremities would not cause a severe mental-health impairment. Moreover, Plaintiff's argument that the ALJ erred by discounting these short-

duration opinions while giving significant weight to Dr. Kwon's light-work

opinion that did not identify a duration for Plaintiff's limitation to light work is

without merit because it is immaterial whether Dr. Kwon identified a durational

end to the opined light work limitation (with an additional restriction for repetitive

activity for the right upper extremity), as the ALJ crafted an RFC consistent with

Dr. Kwon's opinion, which the ALJ found consistent with the objective medical

evidence.  Tr. 26, 489 (Dr. Kwon also opined that Plaintiff's impairments would

improve if she had access to other treatments.).

On this record, the ALJ appropriately considered that Plaintiff only had mild

limitations in each four broad mental functional areas and that her mental

impairments were not severe.  Tr. 22-23.  In addition, based on the ALJ's rational

interpretation of the objective and opinion evidence, the ALJ appropriately did not

discuss whether Plaintiff's mental health impairments qualified under Paragraph C

criteria.  Listings § 12.00(G)(1).

**C. Step Three: Listing**

Plaintiff argues the ALJ failed to consider that Plaintiff meets Listing 1.02

because there is bilateral impairment in each of Plaintiff's upper extremities'

performance of fine and gross motor manipulations.  ECF No. 15 at 5-6.  Because

the ALJ reasonably determined that Plaintiff's left-upper extremity conditions did

not significantly limit Plaintiff's manipulation as discussed *supra*, the ALJ did not error at step three.

### D. Plaintiff's Symptom Claims

Plaintiff contends the ALJ failed to rely on clear and convincing reasons in discrediting her statements about the intensity, persistence, and other limiting effects of her symptoms.  ECF No. 15 at 12-17.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient.  The ALJ must identify what symptom

claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or received for relief of pain or other symptoms; 6) any measures other than treatment the claimant uses or used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p; 20 C.F.R. § 416.929(c)(1)-(3). The ALJ is instructed to "consider all of the evidence in an individual's record" "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms,

the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms. Tr. 20, 24.

### 1. Inconsistent with the Medical Evidence

The ALJ discounted Plaintiff's physical and psychiatric symptoms because they were inconsistent with the medical observations and findings. Tr. 24-26. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the objective medical evidence is a relevant factor, along with the medical findings and observations, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Here, the ALJ found that Plaintiff's reported disabling pain and symptoms were not as severe as she claimed because there were minimal and mild physical examination findings throughout the record and Plaintiff routinely appeared in no acute distress (NAD). Tr. 25-26. As to the notations that Plaintiff appeared in NAD, the ALJ found this inconsistent with Plaintiff's allegations of constant pain as "one would expect her treating providers to note some discomfort or pain behavior during most if not all of her medical appointments." Tr. 25-26. Notably, the medical records do not provide an

ORDER - 24

explanation for what the medical professionals meant by "no acute distress" to permit the ALJ to solely discount the pain and limitations alleged by Plaintiff on the basis of NAD notations. Nonetheless, the ALJ reasonably considered that the treating medical records were largely devoid of objective observations or findings of pain and limitations consistent with the degree of pain alleged by Plaintiff, particularly after the August 2015 surgery. *See, e.g.,* Tr. 867-68 (observing no swelling after surgery and recommending that Plaintiff continue with home exercises); Tr. 798 (noting "bilateral abduction to pain distally); Tr. 806, 809, 964 (noting no clubbing, cyanosis, or edema in extremities); Tr. 812, 911 (recognizing that Plaintiff "has some neuropathic diffuse pain in upper extremities" but no noted decrease in movement or strength); Tr. 900-01 ("Musculoskeletal: Incision site from ulnar surgery well healed"); Tr. 902 ("No Swelling"); Tr. 939 ("Scar medial aspect of left arm at the elbow. Sensitivity to light touch"); Tr. 944, 953 (Plaintiff had no tenderness to palpation, no edema, and with full range of motion.); Tr. 971 (Even though Plaintiff's right handgrip was weak, she had no tremors and was resting comfortably in bed.). On this record, the ALJ reasonably concluded that the medical evidence was not consistent with Plaintiff's complaints of disabling symptoms. This finding is supported by substantial evidence and was a clear and convincing reason, combined with Plaintiff's improvement with therapy and use of

her upper extremities at the administrative hearing as discussed *infra*, to discount

Plaintiff's symptom complaints.

### 2. *Inconsistent with Plaintiff's Improvement with Treatment*

The ALJ discounted Plaintiff's disabling complaints because she reported

improved pain with minimal and conservative treatment. Tr. 26. The effectiveness

of treatment is a relevant factor in determining the severity of a claimant's

symptoms. 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see Warre v. Comm'r of

Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti v. Astrue*, 533

F.3d 1035, 1040 (9th Cir. 2008) (recognizing a favorable response to treatment can

undermine a claimant's complaints of debilitating pain or other severe limitations).

The record must reflect that the severity of the condition decreased sufficiently to

permit the claimant to engage in gainful activity. *Warre*, 439 F.3d at 1006. Here,

the ALJ highlighted that Plaintiff reported decreased hand pain and improved

range of motion and feeling after two weeks with a physical therapist in late 2015.

Tr. 26, 579-87. Plaintiff submits that this improvement must be read in the context

of the overall diagnostic picture and that the record did not demonstrate that any

improvements were more than temporary. ECF No. 18 at 8 (citing Tr. 842, 924,

926). While Plaintiff contends this improvement was temporary, there is

substantial evidence in the record reflecting that when Plaintiff engaged in physical

therapy her pain and her function improved. Tr. 406-11 (noting improvement with

therapy from February to March 2015), Tr. 579-87 (noting improvement with therapy from September to October 2015). On this record, the ALJ reasonably discounted Plaintiff's disabling symptoms because her pain and function improved with treatment. This was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptoms.

### 3. Inconsistent with Conduct at Hearing

The ALJ also discounted Plaintiff's reported symptoms about her upper extremities because they were inconsistent with her physical conduct at the administrative hearing. Tr. 25. An ALJ may not solely rely on his personal observations of a claimant at the hearing to discount the claimant's testimony—a practice condemned as "sit and squirm" jurisprudence. *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). However, the ALJ may consider the claimant's conduct at the hearing, along with the remaining evidence, to determine whether the conduct is consistent with Plaintiff's testimony and the objective evidence. *Smolen*, 80 F.3d at 1284. The ALJ may then permissibly partially base his symptom-decision on the claimant's conduct at the hearing. *Id.*; *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). Here, the ALJ noted that, in spite of disabling pain complaints, Plaintiff used both of her upper extremities as part of her oral communication and moved her upper extremities frequently as she talked. Tr. 25. The ALJ found that Plaintiff's use and admission that she was able to use

her upper extremities while talking was inconsistent with the alleged severity of pain in her upper extremities with any activity. This was a clear and convincing reason—when considered along with Plaintiff's improvement with treatment and the objective medical evidence—to discount Plaintiff's reported symptoms about her upper extremities.

### 4. Inconsistent with Activities

Finally, the ALJ discounted Plaintiff's reported disabling symptoms because they were inconsistent with her activities. Tr. 25. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, the ALJ found that despite her assertions of disabling pain, Plaintiff was able to drive a vehicle and care for a friend's baby. Tr. 25. However, the record is insufficient to support discounting Plaintiff's reported symptoms on the basis of

her driving and the undescribed childcare.  As to driving, the Ninth Circuit recognizes that driving a car does not detract from a claimant's reported symptoms if those driving activities are not transferable to the work setting, emphasizing that a claimant's driving "does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  There is no record that Plaintiff drove to such extent that it was consistent with work-level activity, particularly her prior work as a Substance Abuse Counselor trainee, an SVP 8.  In regard to childcare, the Ninth Circuit requires that the record identify the nature, scope, and duration of "hands on" care in order to discount a claimant's reported symptoms as inconsistent with the childcare.  *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).  Here, the record merely mentions that Plaintiff "has been watching her friend's baby" and contains no details as to the nature, scope, or duration of this babysitting.  Tr. 817.  Moreover, the same medical note mentions that Plaintiff's arms and wrists were bothering her.  Tr. 817.  On this record, neither Plaintiff's driving nor childcare serve as a basis to discount her reported symptoms.  However, this error is harmless because the ALJ listed additional reasons supported by substantial evidence for discrediting Plaintiff's disabling symptom complaints.  *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless

where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.").

### E. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the opinions of Daniel Kwon, M.D.; Wayne Hurley, M.D.; Chad Mongrain, M.D.; and Jackie Earl, OT/L. ECF No. 15 at 17-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

ORDER - 30

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Kwon and Dr. Hurley

Dr. Kwon, who treated Plaintiff, diagnosed Plaintiff in December 2014 with complex regional pain syndrome and ulnar neuropathy on the right upper extremity and mild chronic pain on the left upper extremity, and then in November 2016 diagnosed Plaintiff with complex regional pain syndrome of the upper extremities and ulnar neuropathy on the left upper extremity. Tr. 488, 798. In December 2014, Dr. Kwon opined that repetitive activity could flare-up Plaintiff's pain but that Plaintiff was capable of performing "light work" as defined on the form: lift twenty pounds maximum, lift ten pounds frequently, walk or stand six out of eight hours per day, and sit most of the time with occasional pushing and pulling of arm

or leg controls. Tr. 489. Dr. Kwon opined that it was unknown how long Plaintiff's conditions would impact her ability to work as certain treatments were limited by the insurer and identified that medication trials, infusion of certain medications, and advanced spinal procedures would help address Plaintiff's arm conditions Tr. 489-90.

Dr. Hurley reviewed the evidence of record as of June 2015. Tr. 94-103. Dr. Hurley determined that Plaintiff suffered from fibromyalgia and that Plaintiff was limited to occasionally lifting twenty pounds; frequently lifting ten pounds; sitting and walking for six hours; sitting for six hours; frequently climbing ramps, stairs, ladders, ropes, scaffolds, stooping, kneeling, crouching, and crawling; occasionally handling, fingering, reaching overhead, and reaching laterally with her right arm; and avoiding concentrated exposure to extreme heat and vibrations. Tr. 98-101.

The ALJ gave significant weight to Dr. Kwon's and Dr. Hurley's opinions. Tr. 26. An ALJ must set forth specific, legitimate reasons for crediting one medical opinion over a conflicting opinion. *Garrison*, 759 F.3d at 1012-13; *Lester*, 81 F.3d at 831.

First, the ALJ gave significant weight to Dr. Kwon's and Dr. Hurley's opinions because they were consistent with the medical record. Tr. 26. Relevant factors to evaluating any medical opinion include the amount of relevant evidence

that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, the ALJ found that Dr. Kwon's and Dr. Hurley's opinions were consistent with the generally minimal physical examination findings and the lack of observations that Plaintiff presented in pain. As discussed *supra*, the ALJ reasonably found that the physical examination findings were generally minimal or remedied by an RFC that limited Plaintiff to occasional reaching, handling, and fingering with her right upper extremity. The ALJ also reasonably found that the record reflected few observations that Plaintiff was in considerable pain. These were legitimate and specific reasons, supported by substantial evidence, to give significant weight to Dr. Kwon's and Dr. Hurley's opinions.

The ALJ also gave significant weight to Dr. Kwon's and Dr. Hurley's opinions because they were consistent with Plaintiff's activities. Tr. 26. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 541, 601-02 (9th Cir. 1999). As discussed *supra*, the record contains insufficient information about Plaintiff's driving and child care to serve as a basis to support Dr. Kwon's and Dr. Hurley's opinions. However, this error is harmless because the ALJ provided

another legally sufficient reason for crediting Dr. Kwon's and Dr. Hurley's opinions over the other sources. *See Tommasetti*, 533 F.3d at 1038.

Finally, the ALJ noted that Plaintiff's limitations were accounted for in the RFC. Tr. 26. As discussed *supra*, the ALJ rationally found that Plaintiff's left upper extremity condition was non-severe and thus no limitations for the left upper extremity, beyond the bilateral lift and carry limitations, were incorporated into the RFC. Tr. 23. As to Plaintiff's right upper extremity, the RFC reasonably restricted Plaintiff to occasional reaching, handling, and fingering, consistent with Dr. Kwon's and Dr. Hurley's opinions. Tr. 23, 101, 489. Moreover, Plaintiff fails to establish any harm resulting from the RFC not including a bilateral occasional-manipulative limitation, as the vocational expert testified that Plaintiff would still be able to work as a substance abuse counselor with an occasional bilateral manipulative limitation. Tr. 65-66. *See Molina*, 674 F.3d at 1121-22.

### 2. Dr. Mongrain and Ms. Earl

Dr. Mongrain treated Plaintiff's physical impairments and Ms. Earl evaluated Plaintiff's physical impairments. Tr. 492-95. In June 2015, they jointly diagnosed Plaintiff with injury of the ulnar nerve neuropathy, right hand carpal tunnel syndrome, lateral epicondylitis, and medial epicondylitis and opined that Plaintiff had decreased bilateral gripping and pinching abilities; had a poor ability to tolerate repetitive reaching, grasping, and pinching; should avoid vibratory

tasks; and was permanently unable to sustain full time or part-time work.  Tr. 492-94.

The ALJ assigned little weight to Dr. Mongrain and Ms. Earl's opinion.  Tr. 27.  Because Dr. Mongrain and Ms. Earl's opinion was inconsistent with Dr. Kwon's opinion, Tr. 488-90, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Mongrain and Ms. Earl's opinion.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Mongrain and Ms. Earl's extreme limitations because they were inconsistent with the medical record.  Tr. 27.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Here, Plaintiff submits the ALJ failed to explain why his interpretation of the medical record—that the record generally reflected minimal physical examination findings and a lack of observations of Plaintiff presenting in pain—rather than Dr. Mongrain and Ms. Earl's interpretation was correct.  ECF No. 15 at 19-20.  However, the ALJ previously in his opinion summarized the physical examination findings and the providers' observations and reasonably concluded that these findings and observations were inconsistent with limitations beyond those set forth in the RFC.  Tr. 25-27.  The medical records following Plaintiff's August 2015 surgery, which

was within a year of Plaintiff's alleged disability onset date, reflect that Plaintiff's limitations with her left upper extremity were minor, Plaintiff's right upper extremity pain would be minimized by limiting Plaintiff to occasional use of her right upper extremity (along with bilateral lifting and carrying restriction), and Plaintiff retained the mental ability to sustain work. This was a legitimate and specific reason, supported by substantial evidence, to discount Dr. Mongrain and Ms. Earl's joint opinion.

Second, the ALJ gave little weight to this joint opinion because there was no record that Mrs. Earl was a treating provider and thus her opinion was based on a one-time examination of Plaintiff. Tr. 27. The number of times a claimant meets with a provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, the record reflects that Ms. Earl conducted a physical capacity evaluation and also reviewed the most recent medical notes from Dr. Mongrain, Plaintiff's treating physician. Tr. 537. Ms. Earl lost her clinic note in a computer crash and thus recompleted the physical capacity examination from memory. Tr. 541, 567, 913-17. Both Ms. Earl and Dr. Mongrain signed the Physical Functional Capacity form. Tr. 916. Ms. Earl and Dr. Mongrain's opinion was inconsistent

with Dr. Kwon's treating opinion. It was the ALJ's responsibility to weigh the conflicting medical evidence. *Garrison*, 759 F.3d at 1012-13. Given the objective medical evidence, the ALJ reasonably gave more weight to Dr. Kwon's treating opinion that Plaintiff could perform light work with a restriction to occasional pushing and pulling than to Ms. Earl and Dr. Mongrain's opinion that Plaintiff was unable to sustain work.

Finally, the ALJ discounted this joint opinion because it was inconsistent with Plaintiff's activities. Tr. 27. As discussed *supra*, it was error for the ALJ to discount this joint opinion based on the unexplained driving and child care engaged in by Plaintiff. However, this error was harmless because the ALJ offered other legitimate and specific reasons, supported by substantial evidence, for discounting this joint opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is overall supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to **substitute Andrew M. Saul as the Defendant and update the docket sheet**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 7, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE